UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------
JOSE A.V.,

                    Plaintiff,          <u>DECISION AND ORDER</u>
                                            1:24-cv-03199-GRJ

       v.

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-------------------------------------------------------
GARY R. JONES, United States Magistrate Judge:

In October of 2021, Plaintiff Jose A.V.[1] applied for Disability Insurance Benefits and Supplemental Security Income Benefits under the Social Security Act. The Commissioner of Social Security denied the applications.  Plaintiff, represented by Ny Disability, LLC, Daniel Berger, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits under 42 U.S.C. §§ 405 (g) and 1383 (c)(3).  The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 8).

This case was referred to the undersigned on December 13, 2024. Presently pending is Plaintiff's Motion for Judgment on the Pleadings

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2 (c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

pursuant to Rule 12 (c) of the Federal Rules of Civil Procedure. (Docket No. 14). For the following reasons, Plaintiff's motion is due to be granted and this case is remanded for calculation of benefits.

## I.  BACKGROUND

### A.    *Administrative Proceedings*

Plaintiff applied for benefits on October 20, 2021, alleging disability beginning January 15, 2016. (T at 29).[2]  Plaintiff's applications were denied initially and on reconsideration.  He requested a hearing before an Administrative Law Judge ("ALJ").  A hearing was held on May 10, 2023, before ALJ Edward Malvey. (T at 47-70). Plaintiff appeared with an attorney and testified. (T at 55-65). The ALJ also received testimony from Dale Pasculli, a vocational expert. (T at 65-68).

### B.    *ALJ's Decision*

On July 6, 2023, the ALJ issued a decision denying the applications for benefits. (T at 23-46).  The ALJ found that Plaintiff had not engaged in substantial gainful activity since January 15, 2016 (the alleged onset date) and met the insured status requirements of the Social Security Act through December 31, 2021 (the date last insured). (T at 32).

---

[2] Citations to "T" refer to the administrative record transcript at Docket No. 9.

The ALJ concluded that Plaintiff's schizophrenia was a severe impairment as defined under the Act. (T at 32).

However, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 403, Subpart P, Appendix 1. (T at 35).

At step four of the sequential analysis the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations: he can sustain concentration, persistence, and pace for 2-hour intervals during an 8-hour workday; he can tolerate occasional interactions with co-workers, supervisors, and the public; and he can occasionally set realistic goals and make plans independently of others. (T at 36).

The ALJ concluded that Plaintiff had no past relevant work. (T at 39). Considering Plaintiff's age (24 on the alleged onset date), education (at least high school), work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 39).

As such, the ALJ found that Plaintiff had not been under a disability, as defined under the Social Security Act, and was not entitled to benefits for the period between January 15, 2016 (the alleged onset date) and July

6, 2023 (the date of the ALJ's decision). (T at 40).  On March 1, 2024, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. (T at 1-8).

### C.    Procedural History

Plaintiff commenced this action, by and through his counsel, by filing a Complaint on April 26, 2024. (Docket No. 1).  On October 9, 2024, Plaintiff filed a motion for judgment on the pleadings, supported by a memorandum of law. (Docket Nos. 14, 15).  The Commissioner interposed a brief in opposition to the motion and in support of a request for judgment on the pleadings on January 14, 2025. (Docket No. 19).  On February 14, 2025, Plaintiff submitted a reply memorandum of law in further support of his motion. (Docket No. 22).

## II.  APPLICABLE LAW

### A.    Standard of Review

"It is not the function of a reviewing court to decide de novo whether a claimant was disabled."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). The court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard."  *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The reviewing court defers to the Commissioner's factual findings, which are considered conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec*., 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

"In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted).

"When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or when the ALJ's rationale is unclear, remand "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

B.    *Five-Step Sequential Evaluation Process*

Under the Social Security Act, a claimant is disabled if he or she lacks the ability "to engage in any substantial gainful activity by reason of

any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...."  42 U.S.C. § 423(d)(1)(A).

A claimant's eligibility for disability benefits is evaluated pursuant to a five-step sequential analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*See Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v).

The claimant bears the burden of proof as to the first four steps; the burden shifts to the Commissioner at step five. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). At step five, the Commissioner determines whether claimant can perform work that exists in significant numbers in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

## III.  DISCUSSION

Plaintiff raises one main argument in support of his request for reversal of the ALJ's decision.  Plaintiff argues that the ALJ's assessment of the medical opinion evidence was flawed, which undermines the RFC determination.

### A.    *Medical Opinion Evidence*

"Regardless of its source, the ALJ must evaluate every medical opinion in determining whether a claimant is disabled under the [Social Security] Act." *Pena ex rel. E.R. v. Astrue*, No. 11-CV-1787 (KAM), 2013 WL 1210932, at *14 (E.D.N.Y. Mar. 25, 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(d) (2020)) (internal quotation marks omitted).

In January of 2017, the Social Security Administration promulgated new regulations regarding the consideration of medical opinion evidence. The revised regulations apply to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c.

Because Plaintiff applied for benefits after that date, the new regulations apply here.

The ALJ no longer gives "specific evidentiary weight to medical opinions," but rather considers all medical opinions and "evaluate[s] their persuasiveness" based on supportability, consistency, relationship with the claimant, specialization, and other factors. See 20 C.F.R. § 404.1520c (a), (b)(2).   The ALJ is required to "articulate how [he or she] considered the medical opinions" and state "how persuasive" he or she finds each opinion, with a specific explanation provided as to the consistency and supportability factors. See 20 C.F.R. § 404.1520c (b)(2).

Consistency is "the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources." *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 882 (D. Vt. 2021)(citing 20 C.F.R. § 416.920c(c)(2)).  The "more consistent a medical opinion" is with "evidence from other medical sources and nonmedical sources," the "more persuasive the medical opinion" will be. See 20 C.F.R. § 404.1520c(c)(2).

Supportability is "the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations." *Dany Z*, 531 F. Supp. 3d at 881. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520 (c)(1), 416.920c(c)(1).

The record includes several medical opinions.  The Court will summarize the opinions and then review whether the ALJ's analysis of the various assessments is supported by substantial evidence and consistent with applicable law.

### 1.   NP Engel

In May of 2022, Micah Engel, a psychiatric nurse practitioner, completed a medical source statement in which he stated that he had treated Plaintiff monthly for 30 minutes. (T at 1208).  NP Engel reported a diagnosis of schizophrenia, characterized by significant symptoms, including auditory hallucinations. (T at 1209).  He opined that Plaintiff would likely be absent from work more than 3 times per month due to his impairments or treatment. (T at 1209).

NP Engel assessed marked to extreme limitation in Plaintiff's ability to understand, remember, and carry out instructions; moderate to extreme impairment with respect to Plaintiff's ability to respond appropriately to supervision, co-workers, and work pressure; extreme restriction in his activities of daily living; extreme difficulties in maintaining social functioning; constant deficiencies of concentration, persistence, or pace, resulting in failure to complete tasks in a timely manner; and continual episodes of deterioration or decomposition in work or work-like settings. (T at 1210-1211).

### 2.    NP Silvera-Beckford

In April of 2023, Opal Silvera-Beckford, a psychiatric nurse practitioner, completed a medical source statement.  She reported treating Plaintiff monthly for medication management in sessions lasting 30 minutes.  (T at 1406).  She diagnosed schizophrenia with auditory and visual hallucinations. (T at 1406-1407).

NP Silvera-Beckford opined that Plaintiff would likely be absent from work more than 3 times per month due to his impairments or treatment. (T at 1407).  She assessed extreme limitation in Plaintiff's ability to understand, remember, and carry out instructions; extreme impairment in his ability to respond appropriately to supervision, co-workers, and work

pressure; constant difficulties of concentration, persistence, or pace; and

continual episodes of deterioration or decomposition in work or work-like

settings. (T at 1408-1409).

> ### 3. Dr. Porcelli

In February of 2022, Dr. Clementia Porcelli, a psychologist,

performed a consultative psychiatric evaluation.  On examination, Plaintiff

was cooperative and oriented, with intact attention, concentration, and

memory, but demonstrated fair to poor social skills, restricted affect, and

fair to poor insight and judgment. (T at 1193-94).

Dr. Porcelli opined that Plaintiff could understand, remember, or apply

simple directions without limitation, but had moderate impairment with

respect to understanding, remembering, and applying complex directions

and instructions. (T at 1194).  She assessed marked limitation in Plaintiff's

ability to interact with others and in his capacity to use reason and

judgment to make work-related decisions. (T at 1194).

Dr. Porcelli further opined that Plaintiff had: moderate limitation in

sustaining concentration and pace and sustaining an ordinary routine and

regular attendance; marked limitation with respect to regulating emotions,

controlling behavior, and maintaining well-being; mild to moderate

impairment with maintaining personal hygiene and appropriate attire;

moderate to marked limitation regarding awareness of normal hazards and taking appropriate precautions. (T at 1195).

### 4. State Agency Review Consultants

In February of 2022, Dr. M. Juriga, a non-examining State Agency review consultant, opined that Plaintiff had mild limitation in his ability to understand, remember, or apply information; moderate impairment as to interacting with others; moderate limitation as to concentration, persistence, or pace; and moderate impairment in adapting or managing himself. (T at 77).

In March of 2022, Dr. Juriga found insufficient evidence to assess Plaintiff's ability to understand, remember, or apply information; interact with others; sustain concentration, persistence, or pace; and adapt or manage himself. (T at 92-93).

In March of 2022, Dr. E. Kamin, another non-examining State Agency review consultant, opined that Plaintiff had mild limitation in his ability to understand, remember, or apply information; mild impairment as to interacting with others; moderate limitation as to concentration, persistence, or pace; and moderate impairment in adapting or managing himself. (T at 110).

In June of 2022, Dr. Kamin assessed moderate impairment in Plaintiff's ability to interact with others, but otherwise made the same assessments regarding Plaintiff's mental functioning. (T at 135).

### 5.    ALJ's Analysis

The ALJ determined that Plaintiff had mild limitation with respect to understanding, remembering, or applying information; moderate impairment in interacting with others; moderate limitation in concentrating, persisting, or maintaining pace; and moderate impairment in adapting or managing himself. (T at 35-36).

As noted above, the ALJ concluded that Plaintiff retained the RFC to meet the mental demands of basic work activity, provided he is only required to sustain concentration, persistence, and pace for 2-hour intervals during an 8-hour workday, in an environment that involves only occasional interaction with co-workers, supervisors, and the public and in which Plaintiff is only occasionally required to set realistic goals and make plans independently of others. (T at 36).

In reaching this determination, the ALJ found the opinions of NP Engel, NP Silvera-Bickford, and Dr. Porcelli not supported by, or consistent with, the record and therefore deemed them not persuasive. (T at 38-39).

The ALJ considered the assessments of the State Agency Review consultants persuasive. (T at 38-39).

The Court finds that the ALJ's analysis of the medical opinion evidence cannot be sustained.

As a threshold matter, the ALJ gave insufficient consideration to the fact that NP Engel and NP Silvera-Bickford had treating relationships with Plaintiff.

The Second Circuit has recognized the value of treating source opinions when reviewing claims involving mental impairments. *See Flynn v. Comm'r of SSA*, 729 F. App'x 119,122 (2d Cir. 2018)("The treatment provider's perspective would seem all the more important in cases involving mental health, which are not susceptible to clear records such as [x-rays] or MRIs. Rather, they depend almost exclusively on less discretely measurable factors, like what the patient says in consultations.").

Although the treating physician rule no longer applies, this important principle persists, as the opportunity to observe and treat the claimant constitutes important "support" for a medical opinion under the new standard. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 U.S. Dist. LEXIS 32884, at *28 (N.D.N.Y. Feb. 22, 2021).

"As the amended regulations note, '[a] medical source may have a better understanding of your impairment(s) if he or she examines you than if the medical source only reviews evidence in your folder.'" *Id*. (quoting 20 C.F.R. §§ 404.1520c(c)(3)(v), 416.920c(c)(3)(v))); *see also Cuevas v. Comm'r of Soc. Sec*., No. 20-CV-0502 (AJN) (KHP), 2021 U.S. Dist. LEXIS 19212, at *25-26 (S.D.N.Y. Jan. 29, 2021)("A survey of … cases … show[s] that while the treating physician's rule was modified, the essence of the rule remains the same, and the factors to be considered in weighing the various medical opinions in a given claimant's medical history are substantially similar.")(collecting cases).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions—no matter how well supported and consistent with the record they may be—the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of any [treating source's] opinion.'" *Shawn H. v. Comm'r of Soc. Sec*., No. 2:19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)(quoting *Barrett v. Berryhill*, 906 F.3d 340, 343 (5th Cir. 2018)).

In the present case, the ALJ discounted the assessments of two treating providers and the opinion of the consultative examiner, all of whom

either treated or examined Plaintiff, in favor of two State Agency consultants who never met him and did not have access to his complete record.[3]

What's more it is undeniably significant that *every* opinion in the record from a mental health professional who treated or examined Plaintiff assessed some marked limitation in his ability to meet the mental demands of basic work activity. (T at 1194-95, 1210-11, 1408-09).

The ALJ erred by failing to account for this important consistency between the treating and examining mental health professionals. *See, e.g., Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *9 (N.D.N.Y. Feb. 22, 2021)("With respect to consistency, the ALJ should have addressed the fact that Dr. Ferrin's opinion was an outlier among the medical opinions of record."); *Dany Z. v. Saul*, 531 F. Supp. 3d 871, 885 (D. Vt. 2021)("The new regulations cannot be read as a blank check giving ALJs permission to rely solely on agency consultants while dismissing treating physicians in a conclusory manner."); *see also Shawn H.*, 2020 WL 3969879, at *7 ("Moreover, the ALJ should have considered that the opinions of Stephens and Dr. Lussier are consistent with each other."); *Malia Ann B. v. Comm'r of Soc. Sec.*, No. 5:21-CV-1362-AMN-

---

[3] The State Agency review consultants did not review NP Silvera-Beckford's assessment or treatment notes. (T at 38-39).

CFH, 2023 WL 2838054, at *7 (N.D.N.Y. Feb. 23, 2023), *report and recommendation adopted*, No. 5:21-CV-1362-AMN-CFH, 2023 WL 2623865 (N.D.N.Y. Mar. 24, 2023)(collecting cases holding that "the ALJ is obligated to discuss the consistency of a medical opinion with the other evidence in the record, which necessarily includes other medical opinions").

In addition, the ALJ's reasons for finding the treating and examining providers' opinions unpersuasive are inadequate.

The ALJ recognized that Plaintiff had required "several inpatient hospitalizations" due to severe psychiatric symptoms but noted that these occurred only when Plaintiff was non-compliant with medication and found it significant that Plaintiff was generally described as cooperative and stable when on his medication. (T at 37).

This reasoning is flawed in at least four respects.

First, Plaintiff's inconsistent compliance with medication is more indicative of impairment than it is of an ability to meet the mental demands of basic work activity. *See Johnson v. Colvin*, No. 1:14-CV-00353 (MAT), 2016 WL 624921, at *2, n.1 (W.D.N.Y. Feb. 17, 2016) ("Rather than indicating a lack of serious mental impairment, plaintiff's noncompliance [with treatment] was very possibly a further indicator that her mental health impairments interfered with her functioning"); *see also Jimmeson v.*

17

*Berryhill*, 243 F. Supp.3d 384, 392 (W.D.N.Y. 2017)("If compliance with treatment is used to justify an assigned RFC, it is incumbent upon the ALJ to … fully consider whether a manifestation of the mental health impairment is non-compliance with recommended treatment.").

Second, it is well-settled that "[c]ycles of improvement and debilitating symptoms [of mental illness] are a common occurrence, and in such circumstances, it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Estrella v. Berryhill*, 925 F.3d 90, 97 (2d Cir. 2019)(quoting *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014)(alterations in original)).

Third, even if Plaintiff could arguably be described as "stable" when on medication, that does not undermine the uniform conclusion of the treating and examining providers that he would destabilize if forced to meet the mental demands of basic work activity on a sustained basis.

"[A] person can have a condition that is both 'stable' and disabling at the same time." *Velasquez v. Kijakazi*, No. 19CV9303 (DF), 2021 WL 4392986, at *28 (S.D.N.Y. Sept. 24, 2021)(citations omitted); *see also Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008)(finding that ALJ erred by, *inter alia*, "consistently interpret[ing] reports that [claimant's] condition

has been 'stable' to mean that [her] condition has been good, when the term could mean only that her condition has not changed, and she could be stable at a low functional level"); *Scatola v. Comm'r of Soc. Sec.*, No. 19-CV-3182 (PKC), 2020 WL 5752300, at *7 (E.D.N.Y. Sept. 26, 2020) (treatment notes indicating plaintiff's compliance with medication did not necessarily indicate improvement of anxiety, panic attacks, or depression) (citing *Collins v. Berryhill*, No. 16-CV-6673 (PKC), 2018 WL 259282, at *7 (E.D.N.Y. Jan. 2, 2018) (finding no medical basis for ALJ's conclusion that medications sufficiently managed plaintiff's anxiety such that plaintiff could perform work-related functions)).

Fourth and finally, the ALJ overrated the relevance of Plaintiff's ability to maintain appropriate affect during relatively brief, relatively infrequent encounters with supportive mental health professionals.

The Commissioner's regulations recognize that a claimant's "ability to complete tasks in settings that are highly structured, or that are less demanding or more supportive than typical work settings does not necessarily demonstrate [her] ability to complete tasks in the context of regular employment during a normal workday or work week."  20 C.F.R. Subpt. P, App. 1 § 12.00 (C) (6) (b); *see also Primo v. Berryhill*, 17 Civ. 6875, 2019 U.S. Dist. LEXIS 27074, at *31 (S.D.N.Y. Feb. 19, 2019)(noting

that ALJs must recognize that "the effects of a mental health issue may be different in a work setting than in a non-work setting"); *Flynn v. Comm'r of Soc. Sec. Admin.*, 729 Fed. Appx. 119, 121 (2d Cir. 2018)(decision to discount opinion based on treatment notes indicating claimant was "well-groomed and with calm affect" was "an assessment ... beyond the scope of the ALJ's authority").

The primary question presented is the extent to which Plaintiff's symptoms would be expected to be exacerbated if he was exposed to the demands of competitive, remunerative work on a consistent basis.

The consistent judgment of all the treating and examining mental health professionals was that Plaintiff would have marked impairment in his ability to perform key duties, including regulating emotions, controlling behavior, and maintaining well-being.  (T at 1194-95, 1210-11, 1408-09).

Moreover, the ALJ's reading of the record as documenting well-managed symptoms on medication is undermined by multiple psychiatric hospitalizations (T at 585, 622); chronic missed appointments (T at 468, 480, 488, 501, 506, 507, 508, 509, 511, 529, 540, 544, 552, 557, 563, 566, 936, 944, 946, 949, 957, 1093, 1100, 1188, 1189, 1190, 1391, 1395, 1439, 1446, 1456, 1457, 1458); and significant symptoms, including poor insight, distorted thinking, restricted affect, and auditory and visual hallucinations.

(T at 482, 484, 492,496-97, 515, 516, 528, 534, 535-36, 585, 587-89, 596, 622, 629, 916-17, 1027, 1209, 1392, 1407, 1460, 1462-63). *See Stacey v. Comm'r of SSA*, 799 F. Appx. 7, 10 (2d Cir. 2020) (cautioning "ALJs against scouring medical notes to draw their own conclusions based on isolated descriptions"); *Gough v. Saul*, 799 F. Appx. 12, 14 (2d Cir. 2020)("We fear that the ALJ cherry-picked evidence from the record to support his conclusion that Gough could work full time even though the record as a whole suggested greater dysfunction.").

For these reasons the ALJ's assessment of the medical opinion evidence, and resulting RFC determination, cannot be sustained.

### B.    Remand

A court reviewing the denial of benefits may, in its discretion, remand a claim for further proceedings, or solely for the calculation of benefits. 42 U.S.C. § 405(g) (sentence four) (a reviewing court may enter, upon the pleadings and the administrative record, "a judgment affirming, modifying, or reversing the decision of the Commissioner ... with or without remanding the cause for a rehearing").

Where the record is complete and contains persuasive proof of disability, "no purpose would be served" by additional administrative

proceedings and remand for calculation of benefits is warranted. Curry v. Apfel, 209 F.3d 117, 124 (2d Cir.2000).

Here, the record is complete and contains persuasive proof of disabling psychiatric symptoms, as evidenced by multiple medical opinions from mental health professionals with the opportunity to observe, examine, and treat Plaintiff.

The Commissioner does not articulate any purpose that would be served by further administrative proceedings and this Court finds none. *See Jeremy B. v. Comm'r of Soc. Sec.*, No. 2:18-CV-159-JMC, 2019 WL 3297471, at *10 (D. Vt. July 23, 2019) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication.")(quoting *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004)).

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 14) is GRANTED; the Commissioner's denial of benefits is REVERSED; and this case is remanded for calculation of

benefits. The Clerk is directed to enter final judgment in favor of the Plaintiff and then close the file.

Dated: February 24, 2025

*s/ Gary R. Jones*

GARY R. JONES
United States Magistrate Judge